Gary Lee WILLIAMS *v.* STATE of Arkansas

CR 80-174                                    620 S.W. 2d 277

Supreme Court of Arkansas
Opinion delivered July 13, 1981

*Wayne Boyce* and *E. Alvin Schay*, State Appellate Defender, by:*Jack R. Kearney*, Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

Robert H. Dudley, Justice. On February 5, 1976, appellant Gary Williams was charged by information with capital murder, kidnapping and rape. The State sought enhancement of the sentences by charging that the appellant previously had been convicted of two or more felonies and

employed a firearm in the course of the crimes. Local attorneys were appointed to defend the appellant. One of the attorneys recorded four of the client-attorney conferences. The prosecuting attorney refused to bargain for a plea and the principal issue discussed at the conferences was whether appellant would receive a death sentence. The attorneys for appellant subsequently filed a number of pretrial motions.

On May 13, 1976, the appellant entered his plea of guilty to the charges of capital. murder, kidnapping and rape. He additionally admitted that he had two prior felony convictions and that he had used a firearm in the commission of each of the crimes. No plea agreement had been reached and the prosecutor still demanded the maximum sentence on all counts, including the death penalty for the capital murder. The trial court conducted the plea hearing so that the appellant's rights were protected in accordance with Rule 24.4 of the Rules of Criminal Procedure (Vol. 4A, Repl. 1977). The court explained to appellant the nature of the various charges, the maximum and minimum sentences, the effect of enhancement and the fact that the court could impose additional imprisonment on each charge. The trial judge also explained the right to trial by jury, the right to confront his accusers and the right to subpoena witnesses. The court asked a number of questions to make certain that the appellant understood his rights and that he freely and certainly waived them. The judge asked about the factual basis for the pleas, determined that the pleas were not a product of coercion and that appellant was satisfied by the representation of his court appointed attorneys. The prosecutor then asked the court to sentence the appellant to the maximum enhanced sentences for having committed the crimes of rape and kidnapping and in addition, asked that the sentences be ordered to run consecutively. He also asked that a jury be empaneled to decide the punishment on the capital murder charge. The court withheld the imposition of sentences on the guilty pleas until a jury could be empaneled to determine the sentence on the capital murder guilty plea. Since there was no plea bargain, there was no need to ask the appellant, pursuant to Rule 24.5, A. R. Crim. P., if he understood the sentences were to run consecutively or concurrently.

On June 14, 1976, the appellant filed a motion stating that he had waived his right to a jury trial, that the State did not object, and that by not objecting the State had also waived a jury trial. He then asked the court, sitting as a jury, to set all of the sentences. That motion was not ruled upon because on August 6, 1976, nearly three months after the guilty pleas and just before the jury was to be brought in, the prosecuting attorney informed the court and the appellant that the State would waive the death penalty. He announced that the State would stipulate that the mitigating circumstances outweighed the aggravating circumstances. The defendant then renewed his guilty pleas, stated they were freely and voluntarily given and that he was satisfied with the services of his attorneys. The court then sentenced the defendant to the following consecutive terms: life without parole for capital murder, life imprisonment for rape, thirty years for kidnapping, and fifteen years for employing a firearm in the commission of the crimes.

On May 4, 1978, appellant filed a motion for post-conviction relief under Rule 37, A. R. Crim. P., alleging that he had been coerced into pleading guilty. The trial court denied the petition and appellant brought an appeal to this court. In *Williams* v. *State*, 272 Ark. 98, 612 S.W. 2d 115 (1981), we remanded the case to the trial court so that findings of fact and conclusions of law could be entered. The trial court complied and appellant now contends the findings of fact are in error. On review of the denial of post-conviction relief this Court reverses only if the findings of the lower court are clearly against the preponderance of the evidence. *Irons* v. *State*, 267 Ark. 469, 591 S.W. 2d 650 (1980).

The appellant was advised by his attorneys that if he went to trial before a jury he could be given the death sentence. He contends that this constituted a threat rendering his confession coerced and invalid. The Supreme Court of the United States held in *Brady* v. *United States*, 397 U.S. 742 (1970), that a plea of guilty entered to avoid the death penalty was not a compelled plea within the meaning of the Fifth Amendment. Appellant's justified fear of receiving a higher sentence if he went to trial does not warrant post-

conviction relief. As we stated in *Todd* v. *State*, 253 Ark. 283, 485 S.W. 2d 533 (1972):

> A plea of guilty even if induced by the possibility of a more severe sentence does not establish coercion.

The question is whether the guilty plea was entered intelligently and voluntarily and done with the advice of competent counsel. The burden was on appellant to show that the advice he received from his attorneys was not within the range of competence demanded of lawyers in criminal cases. *Horn* v. *State*, 254 Ark. 651, 495 S.W. 2d 152 (1973). The recorded conferences supply an ample basis for the trial court to find that appellant had failed to meet this burden of proof. In addition, we note that on both of the occasions when he pleaded guilty he testified that he was satisfied with his attorneys. On both plea days, appellant testified that his plea was free and voluntary, facts which we consider. *Simmons* v. *State*, 265 Ark. 48, 578 S.W. 2d 12 (1979). At the post-conviction hearing the following was elicited from appellant.

> Q. Did you plead guilty of your own free and voluntary will?
> A. Yes, sir. I pleaded guilty to keep from getting the death penalty.

Appellant claims that his plea was not a knowing and intelligent one as he thought the sentences would run concurrently. There was no plea bargaining so the appellant could not have been misled by the prosecutor or the court. He had been in prison before and was familiar with the difference between consecutive and concurrent terms. He knew that he had pleaded guilty to each of the crimes. The prosecutor demanded consecutive maximum enhanced terms upon the first plea of guilt on May 13, 1976. Nearly three months later on August 6, 1976, appellant renewed his guilty pleas and was sentenced to consecutive terms. His attorneys testified they advised him of the possibility of consecutive sentences. He did not testify to any agreement to make the terms concurrent. His first objection to consecutive terms came two years later, on May 4, 1978, in a post-

conviction proceeding. The trial court was justified in finding that the pleas of guilt were knowingly and intelligently given.

Affirmed.